Commonwealth ex rel. Malone *v.* Crummer, Appellant.

Argued October 6, 1953. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Anne X. Alpern,* City Solicitor, with her *Louis Rosenberg and J. Frank McKenna, Jr.,* for appellants.

*T. Robert Brennan,* with him *Jas. H. Brennan* and *Brennan & Brennan,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 9, 1953:

This is an action in quo warranto brought by the Commonwealth at the relation of the District Attorney of Allegheny County, to the use of Donald J. Payne, to oust from their positions ten named traffic sergeants in the City of Pittsburgh. The city intervened as a party defendant. After defendants had filed an answer to the complaint, together with new matter to which plaintiff replied, the court entered an order granting the latter's motion for judgment on the pleadings. From that order defendants now appeal.

In pursuance of an ordinance of the City of Pittsburgh an organization known as the Traffic Division of the International Association of Chiefs of Police made a study of traffic conditions in Pittsburgh and offered several recommendations whereby greater police efficiency could be secured in dealing with the traffic problem. In order to implement those recommendations the city council enacted a budget ordinance fixing and determining the officers, personnel and employes to be retained in service for municipal purposes and functions for the then ensuing fiscal year of 1952, and also an ordinance fixing and creating the number, character, title and salary of such officers, personnel and employes for that year and including therein ten traffic sergeants at an annual salary each of $4,085; such positions had never theretofore existed in the police department of the city. Thereupon the Civil Service Commission posted an official bulletin announcing that a promotional competitive examination would be held for these new positions and stated therein that applicants must have had service for a

period of at least four years as regular full-time members of the bureau of police *and also two years' experience in the traffic division within the five years preceding the application.* The examination was held and the ten highest successful candidates—these defendants—were sworn in as traffic sergeants. In the course of the argument before this court counsel stated that there were about 200 members of the police force who would have been qualified to take the examination as far as the requirement of two years' experience in the traffic division was concerned and that a substantial number did in fact take the examination.

The first question raised by plaintiff is whether the City of Pittsburgh had the right to create the new position of traffic sergeant. The court below properly held that the city did have such power. The Act of March 7, 1901, P. L. 20, for the government of cities of the second class, contains a provision (Article II, section 1) that "Councils shall provide by ordinance for such bureaus, clerks, or other subordinate officers, as may be required for the transaction of the business of the departments." Wholly apart from such express authority the city council undoubtedly possessed an inherent power to provide for positions such as those here in question, designed, as they were, to protect the lives and safety of the people. There is no more urgent problem facing our municipalities today than that of traffic control and regulation, and certainly the council could provide for such specialized positions in the bureau of police as were deemed necessary to deal effectively with that problem, nor is there anything in the Act of March 25, 1929, P. L. 67, classifying patrolmen and officers of the police department, which negatives that right; indeed there are many positions now existing in the police department additional to those there classified.

The second question propounded by plaintiff is whether, assuming therefore that the city did have such power, did it legally create these new positions? Plaintiff contends that this could not be done by merely referring to them in a budget ordinance. The court below, however, properly decided that, since the council expressly provided in its ordinance for ten traffic sergeants at a designated salary, it thereby legally, however informally, created such positions.

This brings us to plaintiff's final and probably more serious complaint, namely, that the effect of the Act of August 10, 1951, P. L. 1189, was to invalidate the requirement imposed by the Civil Service Commission of two years' experience in the traffic division as a qualification for appointment as traffic sergeant. That Act, after providing in section 1 that all positions in the bureau of police in cities of the second class should, with certain exceptions, be in the competitive class of the civil service of such cities, further provided, in section 2, that "The civil service commissions in cities of the second class shall not have the power to change any rule or regulation which has been established and which is in force and effect on the date of the approval of this act in so far as the same shall apply to the positions provided for in this act to be in the competitive class; nor shall any commission have the power to waive any such rule or regulation in any specific case or cases."* Plaintiff contends that by the exaction of a two years' traffic experience qualification the Commission was changing, at least adding to, its pre-existing rules and regulations in violation of the stat-

---

* Section 5 of the Act provided that "No person employed in a competitive position in the bureau of police in any city of the second class shall be eligible for promotion from a lower grade to a higher grade until such person shall have completed at least four years service in the grade of patrolman."

ute. It is true that the Commission's Rule 7, section 5, had provided that the line of promotion in the bureau of police for sergeant should be any patrolman who had a service record of two years as a regular, full-time member of the bureau, (changed by the 1951 Act to a minimum of four years,) and called for no other service requirement, but this provision did not contemplate the subsequently created position of traffic sergeant. Given the right of the city to create new positions deemed necessary for the public welfare it obviously became not only permissible but wholly necessary to establish the qualifications for appointments to such positions, and this would not be altering the previous rules which did not cover, and of course could not have covered, positions not then in existence. As far as the conduct of examinations was concerned it should be noted that Rule III, Section 1, provided that the Commission should designate the "general nature, quality and scope of examinations"; that section 2 provided that "In preparing questions to be used in an examination, the Chief Examiner may consult with heads of Departments or their responsible subordinates, and with specially qualified persons or experts outside the city service, concerning duties of a position to be filled, the qualifications to be required of candidates therefor, and data upon which questions may be based"; that Rule VII, section 1, provided that "Vacancies in positions in the classified service above the lowest rank or grade shall, so far as is practicable, be filled by promotion from among persons in the said department, office or institution who have held positions, for a period, to be determined by the Commission, in the next lower rank or grade, said period not to be less than six (6) months"; and that Section 2 provided that "Promotions shall be based on examination, the nature and scope of which shall be determined

by the Commission." It is clear, therefore, that the Rules of the Commission gave it considerable latitude in providing for the nature and scope of the examinations, the necessary qualifications as recommended by "specially qualified persons or experts outside the city service," and the determination, as one of such qualifications, of the amount of previous experience that should be required of the candidates. But, apart from these considerations, what must be regarded as here essentially controlling is that the Act of August 10, 1951, P. L. 1189, in section 6, itself provided that "Vacancies in positions in the competitive class shall be filled by promotions from among persons holding positions in a lower grade in the bureau of police. Promotions shall be based upon merit to be ascertained by tests to be provided by the civil service commission *and upon the superior qualifications of the person to be promoted as shown by his previous service and experience.*" This was a clear legislative recognition of the importance of the factor of previous experience in determining the qualifications entitling an applicant to be promoted. Thus, as the learned court below apparently recognized, even if the Civil Service Commission were obliged to allow all patrolmen who had completed at least four years' service in that grade to take the examination for promotion to the position of traffic sergeant, it could undoubtedly include in the examination itself a question as to the applicant's previous experience in the direction and control of traffic, and could, in its discretion, rate as qualified only those who had had such experience for two years or more. Plaintiff contends that "the intended result must be obtained through the examination," but what the Commission could effect through the medium of the examination it could certainly accomplish more directly, more fairly, and with more time-saving for the candi-

dates, by announcing in advance that two years' experience in the traffic division would be deemed a required qualification for promotion to the position of traffic sergeant.

Plaintiff intimates that if the City of Pittsburgh can create new positions and the Civil Service Commission prescribe the qualifications for filling them the door might thereby be opened to possible chicanery by which favored employes could be promoted to higher grades by the Commission narrowing the competitive field through the formulation of required qualifications based on experience obtained through past tenure. Of course any power can be abused, but here there is not the slightest room for doubt that the creation of these new positions and the prescription of the qualifications required for filling them were measures designed in the utmost good faith and solely for the purpose of dealing with the ever-growing problem of traffic regulation in the City of Pittsburgh.

Because of the views thus expressed in regard to the merits of this controversy we have not given consideration to the question whether these traffic sergeants are public "officers" or mere "employes," and therefore whether or not quo warranto lies, in any event, to oust them from their positions, but it may not be amiss in that connection to call attention to the fact that the title of the very Act of August 10, 1951, P. L. 1189, on which plaintiff relies is as follows: "Regulating the appointment, promotion, suspension, reduction, removal and reinstatement of *employes* . . . in bureaus of police in cities of the second class; . . ."

The order is reversed, and judgment on the pleadings is here entered in favor of the defendants.